|2DALEY, Judge.
This is an appeal by the plaintiffs from the granting of a Motion for Summary Judgment rendered in favor of the defendant, Interior Systems of Louisiana, Inc. For reasons assigned, we affirm the trial court’s ruling.
FACTS:
During the summer of 1994 nineteen year old Jason Orillion was employed as a brick layer’s helper by Rush Masonry, Inc. On August 9, 1994, Jason fell from a scaffold, sustaining injuries to his neck and spinal cord rendering him a quadriplegic. He filed suit against Alton Ochsner Medical Foundation (Ochsner), Brice Building Company, Inc. (Brice), The Aluma Systems USA, Inc., a/k/a *994 The Burke Company (Burke) and Interior Systems of Louisians, Inc. (Interior Systems). Jason Orillion s employer, Rush Masonry, Inc., had been contracted by Brice to perform masonry work on a building owned by Ochsner. The Burke Company was contracted toRsupply scaffolding at this job site. Interior Systems was contracted to perform drywall installation on the building.
Ochsner and Brice were granted an Exception of No Cause of Action by the trial court, which was affirmed by this Court. Orillion v. Alton Ochsner Medical Foundation, 96-494 (La.App. 5th Cir. 11/26/96), 685 So.2d 329, writ denied 96-3046 (La.2/21/97), 688 So.2d 518. Burke was dismissed from the suit when the trial court granted their Motion for Summary Judgment, which was affirmed by this Court. Orillion v. Alton Ochsner Medical Foundation, 97-115 (La. App. 5th Cir. 5/28/97), 695 So.2d 1063.
Interior Systems filed a Motion for Summary Judgment in June 1996, which was denied by the trial court. After further discovery, Interior Systems filed a second Motion for Summary Judgment which was granted by the trial court.
DISCUSSION:
Louisiana Code of Civil Procedure Article 966 provides that a Motion for Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. In 1997, the legislature amended this article to include the following:
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden ofjjproof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
It is well settled in our jurisprudence that appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Rapp v. City of New Orleans, 9-1638 (La.App. 4th Cir. 9/18/96), 681 So.2d 433.
A review of the record indicates that the scaffolding at this job site consisted of five levels of frames which were each approximately six feet high. Each level has an area in which a floor or “deck” can be assembled by placing three 10’ x 20” boards across the frames. The scaffolding also has an additional board placed between the frame and the building called an “outrigger” board. On the date of the accident, Rush was performing masonry work on one side of the building. This accident occurred when Jason was summoned by his co-worker, Harry Wheeler to come up to the fourth level deck to assist him in raising the scaffolding up one level. At the fourth level there were only two boards which comprised the deck. When Jason attempted to raise the outrigger board, he told Mr. Wheeler that it was stuck. Mr. Wheeler instructed Jason to put the board down so that he could come to that side of the scaffold to lift the board. As Mr. Wheeler approached Jason, Jason stepped back falling off of the deck.
|5In their petition, plaintiffs allege:
At all times material herein, Interior Systems of Louisiana, Inc. was a subcontractor on the construction project who also used the scaffold. Upon information and belief, plaintiff avers that the scaffolding boards in question may have been “borrowed” by an employee of Interior.
*995 The specific allegations of negligence against Interior Systems are:
(A) Negligently moving scaffold boards from one platform to another, causing an unsafe condition to exist;
(B) Failing to warn other trades that the scaffold boards were being removed and placed in other sections of the construction site;
(G) Any and all other acts of negligencé which may be discovered or proven at the trial of this matter.
Once Interior Systems moved for summary judgment, it was incumbent upon plaintiff to set forth specific facts to show that there were genuine issues of material fact requiring a trial on the merits. Plaintiff has failed to carry this burden of proof.
An affidavit by the President of Interior Systems which was submitted with defendant’s Motion for Summary Judgment states that there were four employees of Interior Systems working at the job site on the day before and the date of the accident, namely, Charles Holmes, Benjamin Kenny, Glen Mi-ley and Randy Mullet. Their deposition testimony indicates that both the Interior Systems employees (the drywall installers) and the Rush employees (the masonry subcontractors) used the Burke scaffolding. The scaffolding was first used by the drywall installers and then by the masonry subcontractors. The two trades did not use the scaffolding at the same time. In his deposition, Mr. Mullet testified that in his opinion there was a shortage of scaffolding boards at this job site and that boards were borrowed from trade to trade. The employees of Interior Systems used the scaffolding then the masonry subcontractors would come behind them and move the boards and use the scaffolding. All Interior Systems employees testified that on the day of the accident, the Interior |6Systems employees were working on a canopy located on the front of the building and the masonry subcontractors were working on the side of the building. The Interior Systems employees brought a smaller rolling scaffolding which they were using on the day of the accident to perform work on the canopy. This rolling scaffolding used smaller boards than the scaffolding erected by Burke.
A portion of the deposition testimony of Mr. Wheeler, plaintiffs co-worker, was also submitted with the defendant’s motion. Mr. Wheeler testified that on the day of the accident, the masonry subcontractors were working on the side of the building. He arrived at work at approximately 7:00 a.m. that morning and the accident occurred at approximately 11:00 a.m. Mr. Wheeler had been up on the scaffolding all morning. Some areas of the scaffolding were decked with two boards and some were decked with three boards. Mr. Wheeler testified that he did not know who put the two boards at this location on the scaffold or if there was ever a third board at this location. He did not know if the third board was moved or if it was ever present at this location. Mr. Wheeler further testified that he never saw anyone take a board from that spot. Mr. Wheeler also testified that there were other boards available for him to use; had he decided to put a third board at this location. He estimated that it would have taken him approximately five to ten minutes to obtain a third board. He was aware that there were only two boards at this location, but did not feel that this created a big enough problem to stop work and obtain a third board. As to how the accident occurred, Mr. Wheeler explained that when the -outrigger got stuck, it was necessary for Jason to move in order for Mr. Wheeler to lift his end. Jason set down his end of the outrigger and instead of walking straight along the board, Jason backed up, falling through the space created by the absence of the third board.
^Statements given by Jason and Mr. Wheeler shortly after the accident were attached to defendant’s first Motion for Summary Judgment.- In his statement, Jason stated that he was helping to lift boards and “I just was took a back, back step and backed off.” At the end of the statement, Jason was asked “And as far as you know the cause of the accident is you were, you were helping to dismantle, or to, to change the scaffolding ... to raise it up. And you had helped to.move the board away ... and you just didn’t realize, you stepped off.” Jason *996 replied “Right.” In his statement, Mr. Wheeler stated that he and Jason were both standing on a board and after they raised the boards up Jason “just stepped back.”
In Opposition to the Motion for Summary Judgment, the plaintiff submitted an affidavit which states:
At the time of the accident the right side of the building was under construction and was sided entirely with scaffolding. There were not enough scaffolding boards to floor the scaffolding properly. I, and other workers had to work on scaffolding with less that four boards across the floor of the scaffold. The boards were scattered all over the scaffolding and not kept uniformly by stage.
Employees of the dry wall subcontractor regularly removed boards from the scaffolding and moved them around to various levels. This was because there was a shortage of boards.
While moving boards from the outrigger, I stepped back and fell through the scaffold because a hole had been left in the scaffold by someone who had removed the boards. These boards were removed by someone other than myself. I doubt Harry Wheeler, the person I was working with, removed them either as Harry and I were trying to keep as many boards as we could.
During the hearing on this motion, the attorney for the plaintiff stated that he could not prove that Interior Systems employees took the third board from the area in which plaintiff was working, but the deposition testimony showed that Interior Systems employees had a pattern of moving the scaffolding boards without notifying the other trades.
| «On appeal, plaintiff argues that Interior Systems introduced affidavits from Mr. Mi-ley, Mr. Holmes, Mr. Kinney and Mr. Mullet which stated that on the day of the accident they were using only the Burke scaffolding. Plaintiff argues that this contradicted their prior deposition testimony in which they stated that they were using both the smaller rolling scaffold and the Burke scaffold on the day of the accident.[1] However, we find this argument to be without merit. The issue is whether there was ever a third board on the deck level on which plaintiff was working and whether the Interior Systems employees moved the third board. The plaintiffs contention that the Interior Systems employees may have moved this board presumes that a third board was present. The record is not only void of any direct evidence that .Interior Systems employees moved the board, it is void of any evidence that there ever was a third board at this location. The plaintiff has failed to set forth specific facts showing there is a material issue of fact in order to defeat the defendant’s Motion for Summary Judgment Accordingly, the trial judge was correct in granting summary judgment in favor of the defendant, Interior Systems.
AFFIRMED.

. The designated record on this appeal contains only the affidavit of Mr. Mullet.